(Decided 12th December, 1890.)

---

THE SUSQUEHANNA FERTILIZER COMPANY OF BALTIMORE CITY *vs.* DANIEL MALONE.

*Action for Nuisance—Fertilizer factory—Noxious gases—*
*Reasonable use—Prescription—Evidence.*

Where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner for which an action will lie; and this too without regard to the locality where such business is carried on; and although the business may be lawful, and useful to the public, and the best and most approved appliances and methods may be used in its conduct and management.

In the eye of the law no place can be convenient for the carrying on of a business which is a nuisance, and which causes substantial injury to the property of another; nor can any use of one's own land be said to be reasonable which deprives an adjoining owner of the lawful use and enjoyment of his property.

In an action for a nuisance, where the nuisance complained of was the operation of a fertilizer factory on a lot adjoining that owned and occupied by the plaintiff, and which factory was used for the manufacture of sulphuric acid and commercial fertilizers several years before the plaintiff built his house, it was HELD:

1st. That the fact that the plaintiff "came to the nuisance," constituted no defence to the action, in the absence of a claim of prescriptive right by the defendant, that is to say, a user of the place for twenty years.

2nd. That the loss or injury which the owners of adjacent fertilizer factories might sustain if the business carried on by them should be found to be a nuisance, was not a question for the consideration of the jury, and evidence of the amount invested in such factories was inadmissible.

3rd. That the law, in cases of this kind, will not undertake to balance the conveniences, or estimate the difference between the injury sustained by the plaintiff and the loss that may result to the defendant from having its trade and business found to be a nuisance.

No one has a right to erect works which are a nuisance to a neighboring owner, and then say he has expended large sums of money in the erection of his works while the neighboring property is comparatively of little value. The neighboring owner is entitled to the reasonable and comfortable enjoyment of his property; and if his rights in this respect are invaded, he is entitled to the protection of the law, let the consequences be what they may.

Appeal from the Circuit Court for Baltimore County.

This is an action for damages brought by the appellee against the appellant. The case is stated in the opinion of the Court.

*First Exception.*—The defendant asked one of its witnesses the question: "How much capital is invested in fertilizer factories in the immediate vicinity of the Susquehanna Fertilizer Company?" offering, at the same time, to prove by the witness that more than $500,000 was there invested. On objection by the plaintiff, the Court (Burke, J.) refused to permit the question to be answered. The defendant excepted.

*Second Exception.*—The plaintiff offered the two following prayers, and also a third prayer, which is omitted, the same having been refused:

1. If the jury find that the plaintiff is possessed of the premises and dwelling houses referred to in the evidence, and that he leased the ground in the spring of the year

1881, and erected the dwellings immediately thereafter; and if the jury find that in 1883, the defendants leased certain ground in the same block with the plaintiff, and erected buildings, and commenced the manufacture of sulphuric acid fertilizers, and that by subsequent assign·ments they became possessed of certain other premises adjoining, which were leased by Bowen and Mercer in the fall of the year 1880, and on which said Bowen and Mercer, in the following winter, erected buildings and commenced the manufacture of sulphuric acid and fertilizers, and that the said Bowen and Mercer carried on their business during the day time and without serious inconvenience to the plaintiff; and if they find that defendant has combined its works, begun in 1883, or thereabouts, with those of said Bowen and Mercer, and has largely increased their production by the use of larger quantities of material, and run the same, or a portion thereof, day and night; and that whilst so engaged the defendant caused large quantities of foul and offensive smoke and gas and dust of a suffocating character, and charged with acids, to be emitted from its premises, which settled upon the plaintiff's premises and entered his houses, and that the acids contained therein corrode and injure his buildings, and are destructive to the furniture and clothing therein, whenever exposed to the same. And if they find that said gas and smoke are emitted in such quantities as to cause great bodily discomfort to the plaintiff, and his guests and tenants, and that they produce violent coughing and nausea and headache, and prevent at times the taking of necessary food, and compel the occupants of said dwellings to keep their doors and windows closed at times, or seek relief by leaving the premises, and that thereby the value of plaintiff's property is depreciated, and he has suffered injury by loss of tenants, or of custom, at the public house kept by him, if the jury find such, then the plaintiff is entitled to recover on·this action.

2. That if the jury find for the plaintiff, then, in awarding damages, they may consider the interference caused by defendant with the uses to which the property has been put by the plaintiff, including any loss of rental and destruction of business up to the time of bringing this suit, and also any discomfort to the plaintiff occasioned thereby, up to the time of bringing the suit, but not for any injury, if they find such, occasioned by Bowen and Mercer.

The defendant specially excepted to the plaintiff's second prayer, first, because there was no evidence from which the jury could find the amount to which the property itself was damaged by the alleged wrong; and secondly, because there was no evidence from which the jury could find the amount of damage done to plaintiff's trade by the alleged wrong.

The defendant offered the five prayers following:

1. If the jury find from the evidence, that at the time the plaintiff leased the premises mentioned in the declaration, a fertilizer factory of the same general character as that now owned by the defendant, the Susquehanna Fertilizer Company, had already been erected on the premises now occupied by said company's factory, and that said factory was already in operation at the time of said lease by the plaintiff; and if they shall further find that the location of said factory at lower Canton was, in view of all the circumstances of the case as it then stood, a reasonable and proper location for such a fertilizer factory, then the plaintiff is not entitled to recover in this case, unless they find that the defendant company has operated its said factory in an improper and unskilful manner, so as to make it unnecessarily disagreeable or injurious to persons or property in the vicinity; and there is no legally sufficient evidence in this case of any such unskilful or improper operation of said factory on the part of the defendant company.

2. That the plaintiff is not entitled to recover in this case unless the jury shall find that the fertilizer works and factory of the defendant, as operated by it at and before the institution of this suit, constituted what is known in law as a "nuisance" to the plaintiff; and in determining whether or not said factory was a nuisance, they should be guided by the following consideration, viz., Even though they should find that gases and fumes escaped from the factory and were sometimes, owing to the wind being from a certain direction, blown over upon the premises of the defendant, and that gases and fumes would occasionally cause discomfort to the defendant and his tenants, and some injury to clothing or other articles of personal property when exposed to them, yet the plaintiff is not entitled to recover unless they shall consider that said gases thus escaping, incommode the plaintiff or his tenants or guests, and injure his property or interfere with his enjoyment and use of it to an unreasonable extent, and in derogation of the rights of the plaintiff in view of all the facts and circumstances of this case. The jury are further instructed, it is not every inconvenience, injury or discomfort arising from gases or vapors coming from the property of another, that will entitle a person to maintain such a suit as this. Everything must be looked at from a reasonable point of view; a person coming to reside in a locality as that occupied by the plaintiff and defendant in this case, in which establishments similar to the defendant's were already in operation, if the jury shall so find, has no right to expect absolute immunity from inconveniences arising from the escape of gases, odors and vapors. It is only when such inconveniences and annoyances proceed to an unreasonable extent that he has a right to complain; and when the jury come to consider the facts, all the circumstances, including those of time and locality, ought to be taken into account; and in respect

to the latter they are instructed that, in countries where great works are carried on, persons must not stand on their extreme rights, and bring actions in respect of every matter of annoyance, for, if so, the business of the country might be seriously interfered with. The case should be looked at not with a view to the question whether, abstractly, that amount of gas, fumes, &c., was a nuisance, but whether it was a nuisance to a person living at Canton, and coming there at the time and under the circumstances of the plaintiff leasing his property.

3. That if the jury find that at the time the defendant company acquired the factory and premises mentioned in the declaration, as the fertilizer factory was already in operation thereon, and that the defendant has only continued to operate the same factory and in its same general manner, then the plaintiff is not entitled to recover, unless they find that he gave notice to the defendant to discontinue the operation of said factory prior to the institution of this suit, and there is no legally sufficient evidence in this case from which they can find such notice.

4. That if the jury find that the defendant has continued to manufacture fertilizers at its factory, and that said factory was used for a like purpose, and in a like manner, before it came to the defendant, and that it was so being used at the time the plaintiff acquired his property and improved the same, and that plaintiff then knew that it was so used, and that the place in which defendant conducted its business was a place reasonably adapted for such a business, with a view to its nature and to the public convenience and comfort, and that it was conducted by the defendant in the way calculated to avoid, as far as practicable, inflicting any injury upon the plaintiff, and that it did not in fact cause any

material inconvenience or discomfort or injury to the plaintiff, then the plaintiff is not entitled to recover.

5. That if the jury find that at the time the plaintiff acquired the property mentioned in the evidence, and erected thereon the improvements mentioned in evidence, there was already erected and in operation on the adjacent lot, a fertilizer factory, in which were used the same agents, and from which were emitted the like gases and emanations that were used in and emanated from the factory of the defendant, and producing like effects, and that said factory afterwards passed into the possession of and was operated by the defendants, as it had been operated before; and if they shall further find, that when plaintiff acquired and improved his said property, and prior thereto, there was established and operated in the same locality, factories similar to that of the defendant, from which like emanations producing like results, proceeded, and that said factories employed large numbers of men, and produced merchandise of great value, and that the plaintiff was aware of the existence of said factories when he so acquired and improved his said property; and if they shall further find, that the factory of the defendant was in a suitable and proper place, with a view to the convenience, welfare and comfort of the public; and if they shall further find, that the damage and injury suffered by the plaintiff, were only such as are incident to the proximity of such a business as that of the defendant in that locality, and were not unreasonable or excessive in view of the location, and of all the circumstances of the case, then plaintiff is not entitled to recover in this action.

The Court granted the plaintiff's first and second prayers, and rejected the third, overruling the special exceptions; and rejected the defendant's first, second and third prayers, and granted its fourth and fifth. The defendant excepted, and the verdict and judgment being against it, appealed.

Susquehanna Fertilizer Co. *vs.* Malone.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*W. L. Marbury*, and *Charles Marshall*, for the appellant.

*R. R. Boarman*, and *D. G. McIntosh*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action for a nuisance, and the questions to be considered are questions of more than ordinary interest and importance. At the same time, it does not seem to us, that there can be any great difficulty as to the principles by which they are governed. The plaintiff is the owner of five dwelling houses on Eighth Avenue, in Canton, one of the suburbs of Baltimore City. The corner house is occupied and kept by the plaintiff as a kind of hotel or public house, and the other houses are occupied by tenants. On the adjoining lot is a large fertilizer factory, owned and operated by the defendant, from which the plaintiff alleges noxious gases escape, which not only cause great physical discomfort to himself and his tenants, but also cause material injury to the property itself. The evidence on the part of the plaintiff shows that this factory is used by the defendant for the manufacture of sulphuric acid and commercial fertilizers—that noxious gases escape therefrom, and are driven by the wind upon the premises of the plaintiff, and of his tenants; that they are so offensive and noxious as to affect the health of plaintiff's family, and at times to oblige them to leave the table, and even to abandon the house. It further shows that these gases injure, materially, his property, discolor and injure clothing hung out to dry, stain the glass in the windows and even corrode the tin spouting on the houses.

The evidence on the part of the defendant is in direct conflict with the evidence offered by the plaintiff; but still, assuming the facts testified to by plaintiff's witnesses to be true—and this was a question for the jury—an actionable injury was done to the plaintiff, for which he was entitled to recover. No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business. *Attorney-General vs. Colney Hatch Lunatic Asylum*, 4 *L. R. Ch. App.*, 147; *Pinckney vs. Ewens*, 4 *L. T. Rep.*, *N. S.*, 741; *Stockport Water Works Co. vs. Potter*, 7 *Hurl. & N.*, 160; *Rylands vs. Fletcher*, *L. R.*, 3 *Eng. & Ir. App.*, 330. As far back as *Poynton vs. Gill*, 2 *Rolle's Abr.*, 140, an action, it was held, would lie, for melting lead so near the plaintiff's house as to cause actual injury to his property, even though the business was a lawful one, and one needful to the public, "for the defendant," say the Court, " ought to carry on his business in waste places and great commons remote from inclosures, so that no damage may happen to the owner of adjoining property." And the doctrine thus laid down has been to this day the doctrine of every case in which a similar question has arisen.

We cannot agree with the appellant that the Court ought to have directed the jury to find whether the place where this factory was located was a *convenient and proper place* for the carrying on of the appellant's busi-

ness, and whether such a use of his property was a *reasonable use*, and if they should so find the verdict must be for the defendant. It may be convenient to the defendant, and it may be convenient to the public, but, in the eye of the law, no place can be convenient for the carrying on of a business which is a nuisance, and which causes substantial injury to the property of another. Nor can any use of one's own land be said to be a reasonable use, which deprives an adjoining owner of the lawful use and enjoyment of his property. The only case which gives countenance to such a doctrine is *Hole vs. Barlow*, 4 *C. B. N. S.*, 334, (93 *Eng. Com. Law*,) decided in 1858, in which it was held that if the place where the bricks were burnt was a proper and convenient place for the purpose, the defendant was entitled to a verdict, notwithstanding the burning of the bricks may have interfered with the physical comfort of the plaintiff. And it was upon the authority of this case that in *Bamford vs. Turnley*, 113 *Eng. Com. Law Rep.*, 62, where an action was brought for a nuisance arising from the burning of bricks on the defendant's land, near the plaintiff's house, COCKBURN, Chief Justice, directed the jury that, if they thought the spot was a convenient and proper one, and the burning of the bricks was, under the circumstances, a reasonable use by the defendant of his own land, the defendant would be entitled to a verdict, although the burning of the bricks was an interference with the plaintiff's comfort.

This ruling was, however, on appeal to the Exchequer Chamber, reversed, and in the opinion delivered by Mr. Justice WILLIAMS and concurred in by ERLE, C. J., KEATING, J., and WILDE, B., after referring to a passage in *Comyn's Digest*, on which the decision in *Hole vs. Barlow* was founded, he says:

"In *Hole vs. Barlow*, however, the Court appear to have read the passage as containing a doctrine that a

place may be 'proper and convenient' for the carrying on of a trade, notwithstanding it is a place where the trade cannot be carried on without causing a nuisance to a neighbor.    This is a doctrine which has certainly never been judicially adopted in any case before that of *Hole vs. Barlow,* and, moreover, the adoption of it would be inconsistent with the judgments pronounced in some of the cases cited at the bar during the argument, and more especially with the case of *Walter vs. Selfe,* 4 *De Gex & Smale,* 315, 326.    And the introduction of such a doctrine into our law would, we think, lead to great inconvenience and hardship." * * * "If it be good law, that the fitness of the locality prevents the carrying on of an offensive trade from being an actionable nuisance, it appears necessarily to follow that this must be a reasonable use of the land.    But if it is not good law, and if the true doctrine is that whenever, taking all the circumstances into consideration, including the nature and extent of the plaintiff's enjoyment, before the acts complained of, the annoyance is sufficiently great to amount to a nuisance, according to the ordinary rule of law, an action will lie, whatever the locality may be, then surely the jury cannot properly be asked whether the causing of the nuisance was a reasonable use of the land."

The question was again fully considered in *Tipping vs. The St. Helen's Smelting Company,* 116 *Eng. Com. Law Rep.,* 608, where an action was brought for a nuisance, caused by noxious vapors proceeding from the smelting works of the defendant, and the verdict being for the plaintiff, a motion was made for a new trial, on the ground of misdirection by MELLOR, J., before whom the case was tried at the Liverpool Summer Assizes in 1863. In overruling the motion, COCKBURN, C. J., said: "The direction of my brother MELLOR cannot be found fault with if looked at by the light of the decision of the

majority of the Judges of the Exchequer Chamber in *Bamford vs. Turnley.* That decision overruled the previous one of the Common Pleas in *Hole vs. Barlow,* and establishes that, where a case of nuisance is sought to be made out, it is not a right question to put to the jury to say whether the place where the act was done was a proper and convenient one for the purpose, or whether the doing it in that place was a reasonable use by the defendant of his own land." An appeal was then taken to the House of Lords, and in his argument Sir ROUNDELL PALMER contended that the learned Judge who tried the case had misdirected the jury, inasmuch as sensible discomfort from carrying on a necessary trade in an ordinary and proper manner and in a convenient and suitable locality, was not an actionable injury.

The Lord Chancellor said: "It is said that, inasmuch as this copper smelting is carried on in what the appellant contends is a fit place, it may be carried on with impunity, although the result may be the utter destruction, or the very considerable diminution, of the value of the plaintiff's property. I apprehend that that is not the meaning of the word 'suitable,' or the meaning of the word 'convenient,' which has been used as applicable to the subject. The word 'suitable,' unquestionably cannot carry with it this consequence—that a trade may be carried on in a particular locality, the consequence of which trade may be injury and destruction to the neighboring property. Of course, I except cases where any prescriptive right has been acquired by a legthened user of the place."

Lord CRANWORTH said: "In stating what I always understood the proper question to be, I cannot do better than adopt the language of Mr. Justice MELLOR: 'It must be plain that persons using a limekiln, or other works, which emit noxious vapours, may not do an actionable injury to another, and that any place where

such an operation is carried on so that it does occasion an actionable injury to another, is not in the meaning of the law, a 'convenient place.'"

So we take the law to be well settled that, in actions of this kind, the question whether the place where the trade or business is carried on, is a proper and convenient place for the purpose, or whether the use by the defendant of his own land is, under the circumstances, a reasonable use, are questions which ought not to be submitted to the finding of the jury.

We fully agree that, in actions of this kind, the law does not regard trifling inconveniences; that every thing must be looked at from a reasonable point of view; that in determining the question of nuisance in such cases, the locality and all the surrounding circumstances should be taken into consideration; and that where expensive works have been erected and carried on, which are useful and needful to the public, persons must not stand on extreme rights, and bring actions in respect of every trifling annoyance, otherwise, business could not be carried on in such places. But still, if the result of the trade or business thus carried on is such as to interfere with the physical comfort, by another, of his property, or such as to occasion substantial injury to the property itself, there is wrong to the neighboring owner for which an action will lie. *St. Helen's Smelting Company vs. Tipping*, 11 *H. L. Cas.*, 642.

But then it is said there was a fertilizer factory on the lot on which the appellant's works are now erected, and that this factory was used for the manufacture of sulphuric acid and fertilizers several years before the plaintiff built his house, and that the plaintiff has no right to complain because he "came to the nuisance." But this constitutes no defence in this action.

If the appellant had acquired a prescriptive right, that is to say, a user of the place for twenty years, that

Susquehanna Fertilizer Co. *vs.* Malone.

would present a different question. But no such right is claimed in this case. And that being so, the appellant had no right to erect works which would be a nuisance to the adjoining land owned by the plaintiff, and thus measurably control the uses to which the plaintiff's land may in the future be subject. It could not, by the use of its own land, deprive the plaintiff of the lawful use of his property.

The question of coming to a nuisance was fully considered in *Bliss vs. Hall*, 4 *Bing. N. C.*, 183, where, in an action for a nuisance arising from carrying on the business of making candles, the defendant pleaded that he had carried on his business at the same place, in the same manner, and to the same extent, three years before the plaintiff became possessed of his messuage. In sustaining the demurrer to this plea TINDAL, Chief Justice, says: "That is no answer to the complaint in the declaration; for the plaintiff came to the house he occupies with all the rights which the common law affords, and one of them is a right to wholesome air. Unless the defendant shows a prescriptive right to carry on his business in the particular place, the plaintiff is entitled to judgment."

PARK, J., in *Elliotson vs. Feetham*, 2 *Bing. N. C.*, 134, said that the defendant should at least have alleged a holding of twenty years duration. Here he does not go beyond three.

And in *Crump vs. Lambert, L. R.*, 3 *Equity Cases*, 409: "Whether one," says Lord ROMILLY, "comes to the nuisance or the nuisance comes to him, he still retains his right to have the air that passes over his land pure and unpolluted." And so in *Tipping vs. St. Helen's Smelting Company, L. R.*, 1 *Ch. App.*, 66, Vice-Chancellor PAGE WOOD held, that the fact that the plaintiff had come to the nuisance did not disentitle him to relief in equity.

It does not seem to us, therefore, that the defendant has any reason to complain of the several instructions granted by the Court at the request of the plaintiff, or to the refusal of its own prayers. If there was any error on the part of the Court, it was, perhaps, in granting the defendant's fifth prayer, to which, however, we take it for granted the defendant company makes no objection.

Now, as to the evidence offered in the first exception, it does not seem to us that the fact that $500,000 had been invested in other fertilizer factories in the neighborhood could have any bearing upon the issues before the jury. The defendant had already proved that there was a number of fertilizer factories in the neighborhood, and had offered evidence tending to prove that the nuisance complained of, was caused by these factories. Such evidence as this was admissible and proper evidence. But the fact that $500,000 had been invested in other works in the neighborhood could not in any manner affect the plaintiff's right to recover. The only effect of such evidence, it seems to us, would be to show what loss or injury the owners of these factories might sustain, if the business carried on by them should be found to be a nuisance.

But that was not a question for the consideration of the jury. The law, in cases of this kind, will not undertake to balance the conveniences, or estimate the difference between the injury sustained by the plaintiff, and the loss that may result to the defendant from having its trade and business, as now carried on, found to be a nuisance. No one has a right to erect works which are a nuisance to a neighboring owner, and then say he has expended large sums of money in the erection of his works, while the neighboring property is comparatively of little value. The neighboring owner is entitled to the reasonable and comfortable enjoyment of his property, and if his rights in this respect are invaded, he is

entitled to the protection of the law, let the consequences be what they may.

(Decided 12th December, 1890.)

