957 A.2d 628

Michela GALLAGHER

v.

H.V. PIERHOMES, LLC et al.

No. 1516 Sept. Term, 2007.

Court of Special Appeals of Maryland.

Oct. 1, 2008.

William M. Huddles (Nicole L. Campbell, Huddles, Jones, Sorteburg & Dachille, P.C., on the brief), Columbia, MD, for Appellant.

Jean–Maries Sylla, Jr. and Jonathan E. Agin (Taylor, Sylla & Agin, LLP, on the brief), Washington, DC, for Appellee.

Panel: SALMON, DEBORAH S. EYLER and RONALD RUBIN, Specially Assigned, JJ.

RONALD RUBIN, Judge, Specially Assigned.

We are asked in this case to extend the doctrine of strict liability for abnormally dangerous activities, currently expressed in the Restatement (Second) of Torts §§ 519 and 520 (1977), to pile driving operations conducted at the Baltimore Inner Harbor that resulted in property damage to Gallagher's residence, located 325 feet from the construction site. We also are asked to declare that pile driving, in the factual circumstances presented in this case, constitutes both a public and a private nuisance. We shall decline all of those requests and, consequently, affirm the well-reasoned decision of the circuit court.

The plaintiff in this case, Michela Gallagher, appeals from the decision of the Circuit Court for Baltimore City, which granted the motion of the defendants, HV Pierhomes, LLC and HV Development & Contracting Co., for judgment notwithstanding the jury's verdict. The jury returned a verdict of $55,189.14 in Gallagher's favor for damage to her home which, the jury found, was caused by the defendants' pile driving activities in connection with the construction of waterfront townhomes at the Baltimore Inner Harbor. After a hearing, the circuit court granted the defendants' motion under Rule 2–532. The plaintiff timely noted an appeal and raised the following questions for review,[1] which we have slightly rephrased:

---

[1]. The defendants raised additional questions in their memoranda regarding whether the trial court abused its discretion under Rule 5–702

1. Did the trial court err in concluding that pile driving is not an abnormally dangerous activity?

2. Did the trial court err in concluding that the plaintiff had not proven a claim for private nuisance?

3. Did the trial court err in concluding that the plaintiff had not proven a public nuisance?

We are asked in this case to extend the doctrine of strict liability for abnormally dangerous activities, currently expressed in the Restatement (Second) of Torts §§ 519 and 520 (1977), to pile driving operations conducted at the Baltimore Inner Harbor that resulted in property damage to Gallagher's residence located 325 feet from the construction site.

**The Proceedings Below**

On June 14, 2005, Gallagher sued HV Pierhomes LLC and HV Development & Contracting Co. The initial complaint contained claims for negligence, strict liability, and public and private nuisance. On December 21, 2005, Gallagher filed an amended complaint, which abandoned the negligence claim. All of Gallagher's claims for relief arose out of the pile driving operations conducted by the defendants on the site of the former Key Highway Shipyard. Gallagher contended that vibrations from the pile driving damaged her home, located at 423 East Hamburg Street in Baltimore. Key Highway; a row of mixed use properties; Covington Street; a retaining wall; and a solid earthen wall, on which Gallagher's house rests, separate Gallagher's house from the pile driving site.

The Key Highway Shipyard, formerly owned by the Bethlehem Steel Corporation, was used to repair navel ships during World War II and through the Vietnam War. A shipyard of some sort has operated at this location from the beginning of

---

in admitting the testimony of the plaintiff's expert witness and the sufficiency of the evidence as to proximate cause. Because the trial court did not address these issues in her decision under Rule 2–532, and the defendants did not file a cross-appeal, these questions are not properly before us. At oral argument, counsel for the defendants conceded that these points are not preserved for appellate review.

the 20th century until 1982, when Bethlehem Steel closed the facility.

The defendants demolished the original shipyard piers, which were built 40 to 50 years ago and constructed new piers in the same location, by driving piles into the Baltimore Inner Harbor. The defendants built 58 townhomes on these new piers. Pile driving was the only method of constructing the new townhomes in this particular location because the U.S. Army Corps of Engineers would not allow the Inner Harbor to be "back filled."[2] The pile driving of which Gallagher complained occurred periodically between September 2003 and October 2004.[3]

The plaintiff's home was constructed shortly before the War of 1812. She testified that no pile driving was conducted in the area during the years she lived in the house, beginning in 1997, until the defendants' activities commenced in September 2003. Previously, pile driving was used to build the Seagirt Marine Terminal, the Dundalk Marine Terminal, as well as the Pratt and Light Street Pavilions, which are located across from the plaintiff's residence in the Inner Harbor.

Before the defendants began their project, permits were received from the U.S. Army Corps of Engineers, the Maryland Department of the Environment, and the City of Baltimore. The permitting process took approximately two years. Pile driving on the site began only after geotechnical studies were conducted by engineering firms. During the course of actual pile driving, two permanent seismic stations and five mobile geophones were placed in the surrounding neighborhood to ensure that vibrations were monitored and did not exceed the limits established by the engineers. During the

---

2. The Inner Harbor is approximately 40 feet deep at this location.

3. A new Ritz Carlton Hotel sits adjacent to the defendants' townhome project at the Baltimore Inner Harbor. This project was also built on piers, resting on approximately 2,000 piles, but Gallagher did not claim that pile driving from the Ritz Carlton project caused damage to her home.

course of the defendants' activities, there was only a single recorded vibration that exceeded the limits.

The case proceeded to trial on December 15, 2006. The plaintiff testified that she heard and felt vibrations from the pile driving in her home. She further testified that cracks began to develop in her plaster walls and in other portions of her home soon after the pile driving began and that no cracks occurred once the pile driving was completed. She was not aware of any other residents in the area who made claims or filed lawsuits for damage to their homes as a result of the vibrations caused by the defendants' pile driving. No evidence of any other claims or suits on account of pile driving vibrations was presented at trial.

Following the presentation of the plaintiff's case, the defendants moved for judgment under Rule 2–519. The circuit court reserved its decision on the motion. The defendants presented their case-in chief and, thereafter, renewed their motion for judgment. The circuit court, after receiving additional written submissions from the parties again reserved its decision on the motions for judgment and allowed the case to go to the jury.[4] On December 21, 2006, the jury returned a verdict in Gallagher's favor. The jury found that: (1) pile driving caused damage to Gallagher's home, and HV Pierpont and HV Development were responsible for the pile driving; (2) the pile driving created a public nuisance; (3) the pile driving created a private nuisance; and (4) Gallagher suffered damages in the amount of $55,189.14.

After the jury's verdict was announced, the defendants renewed their motions for judgment. After memoranda were submitted the circuit court held a hearing. By Order entered on August 20, 2007, the circuit court granted the defendants' motion for judgment notwithstanding the verdict on all claims. Gallagher timely noted this appeal. Additional facts will be discussed, as necessary.

---

4. More precisely, the circuit court allowed the jury to decide causation, but reserved for the court the decision as to whether the activity in question was abnormally dangerous.

**Standard of Review**

██ A motion for judgment notwithstanding the verdict under Rule 2–532 "tests the legal sufficiency of the evidence." *Impala Platinum, Ltd. v. Impala Sales (USA), Inc.,* 283 Md. 296, 326, 389 A.2d 887 (1978). "The court will deny the motion if there is any evidence, however slight, upon which a reasonable jury could have reached its verdict. The court must assume the truth of all credible evidence on the issue and all inferences fairly deducible therefrom in the light most favorable to the party against whom the motion is made." P. Niemeyer & L. Schuett, *Maryland Rules Commentary* 448 (3d ed. 2003).

██ In the words of Judge Sally Adkins (now serving on the Court of Appeals): "A party is entitled to a judgment not withstanding the verdict (JNOV) when the evidence at the close of the case, *taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense."* *Jacobs v. Flynn,* 131 Md.App. 342, 353, 749 A.2d 174 (2000) (emphasis added). *See also Mahler v. Johns Hopkins Hospital, Inc.,* 170 Md.App. 293, 317–18, 907 A.2d 276 (2006); *Ramsey v. Physician's Memorial Hospital, Inc.,* 36 Md.App. 42, 48–49, 373 A.2d 26 (1977).

Because the evidence before the circuit court was legally insufficient to support the imposition of strict liability in tort for the conduct in issue, or to establish a private or public nuisance, the granting of the motion was not error.

**Strict Liability in Maryland**

For more than a century, the Court of Appeals has recognized the doctrine of strict liability, derived initially from *Rylands v. Fletcher,* L.R. 3 H.L. at 338, *Fletcher v. Rylands,* 3 H. & C. 774, 159 Eng. Rep. 737 (1865), *rev'd in Fletcher v. Rylands,* L.R. 1 Ex. 265 (1866), *aff'd in Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868). *See Baltimore Breweries Co. v. Ranstead,* 78 Md. 501, 28 A. 273 (1894); *Susquehanna Fertilizer Co. v. Malone,* 73 Md. 268, 20 A. 900 (1890). *See also Toy v. Atlantic Gulf & Pacific Co.,* 176 Md. 197, 212–13, 4 A.2d 757 (1939). The original "rule" of *Rylands,* erroneously, is said to

be "that the person who, for his own purposes, brings on his land and collects and keeps there anything that likely to do mischief if it escapes, must keep it at his peril, and if he does not do so is prima facie answerable for all damage which is the natural consequence of its escape." *Fletcher v. Rylands*, L.R. 1 Ex. at 279–80. As Dean Prosser has explained: "In the House of Lords this broad statement was sharply limited, and placed upon a different footing. Lord Cairns said that the principle applied only to a 'non-natural' use of the defendant's land, as distinguished from 'any purpose for which it might in the ordinary course of the enjoyment of the land be used.'" W. Prosser & W. Keaton, *Torts* § 78 at 545 (5th ed. 1978), *quoting in part Rylands v. Fletcher*, L.R. 3 H.L. at 338.

The Court of Appeals adopted the modern version of strict liability in *Yommer v. McKenzie*, 255 Md. 220, 257 A.2d 138 (1969). In that case, the Court of Appeals used the definition set forth in the tentative draft of § 519, and the criteria for determining an abnormally dangerous activity set fort in § 520 of the Restatement (Second) of Torts (Tent. Draft No. 10, 1964).

In *Yommer*, the owners of a residential property sued the owners of a gasoline station immediately adjacent to their property. The gasoline storage tank had leaked, contaminating the plaintiff's well water. The Court of Appeals affirmed the jury's verdict in favor of the homeowners even though there had been no finding of negligence. Key to the Court's decision in *Yommer* was the placement of the gasoline storage tank.

No one would deny that gasoline stations as a rule do not present any particular danger to the community. However, when the operation of such activity involves the placing of a large tank adjacent to a well from which a family must draw its water for drinking, bathing and laundry, at least that aspect of the activity is inappropriate to the locale, even when equated to the value of the activity.

*Yommer*, 255 Md. at 225, 257 A.2d 138. The Court of Appeals, after quoting approvingly from Dean Prosser's commentary to the tentative draft of the Restatement (Second) of

Torts, said: "We accept the test of appropriateness as the proper one: that the unusual, the excessive, the extravagant, the bizarre, are likely to be non-natural uses which lead to strict liability." *Yommer*, 255 Md. at 226, 257 A.2d 138 (footnote omitted). *See also Toy*, 176 Md. at 212–13, 4 A.2d 757.

In *Kirby v. Hylton*, 51 Md.App. 365, 443 A.2d 640 (1982), this Court noted the importance of the location of the activity in assessing whether the imposition of strict liability was legally justified. In that case, we rejected the application of strict liability when a child was injured when run over by a heavy drain pipe that was awaiting placement on land adjacent to his house. This Court said: *"Yommer* emphasized that the appropriateness of the activity in the particular place was the most crucial factor." *Kirby*, 51 Md.App. at 374, 443 A.2d 640. Applying the section 520 factors, this Court continued:

> As the record makes clear, the storage of the pipe was not the kind of abnormally dangerous activity which was contemplated by *Yommer* and § 520. The activity did not involve a high degree of risk of harm to others, which, if it occurred, was likely to be great and which could not have been eliminated by the exercise of reasonable care; the storage of the pipe in order to improve a residential water and sewage system, was neither totally uncommon to the neighborhood nor was it inappropriate to the particular place where it occurred; and it had at least some value to the neighborhood.

*Kirby*, 51 Md.App. at 375, 443 A.2d 640.

This Court revisited strict liability in *Dudley v. Baltimore Gas & Elec. Co.*, 98 Md.App. 182, 632 A.2d 492 (1993). In that case, the plaintiff claimed that a leaking natural gas line caused the destruction of her home in Baltimore City. The plaintiff alleged that the gas company should be strictly liable for the destruction of her home because equipment supplied by the gas company allowed natural gas to accumulate and explode in the plaintiff's residence. *Dudley*, 98 Md.App. at 205, 632 A.2d 492. According to the plaintiff, "the activity of

delivering gas to consumers through a pipe distribution system is inherently dangerous, even without defects in products, and simply cannot be performed safely." *Dudley,* 98 Md.App. at 206, 632 A.2d 492. The circuit court granted summary judgment for the gas company on the strict liability claim. This Court affirmed.

In analyzing the claim, the Court first noted: "The strict liability doctrine for abnormally dangerous activities is set out in the Restatement (Second of Torts §§ 519 and 520 (1977))." After reviewing the factors set forth in the Restatement, the Court held that the activity in question was not abnormally dangerous. *Dudley,* 98 Md.App. at 207–08, 632 A.2d 492.

The Court of Appeals reiterated the importance of locale in *Rosenblatt v. Exxon Co. USA,* 335 Md. 58, 70–72, 642 A.2d 180 (1994). In that case, a previous tenant of commercial property had installed gasoline storage tanks on the property. A subsequent owner of the land found hydrocarbon in the soil and groundwater. The circuit court granted the prior owner's motion for summary judgment on the counts of negligence, strict liability, trespass and nuisance. The plaintiff appealed and the Court of Appeals granted certiorari prior to review by this Court. In affirming the grant of summary judgment on the strict liability claim, the Court of Appeals discussed *Yommer,* which also involved a gasoline storage tank, and reiterated "that the most crucial factor in determining whether an activity was abnormally dangerous was the 'appropriateness of the activity' to the place in which it was carried on." *Rosenblatt,* 335 Md. at 70, 642 A.2d 180 (*quoting Yommer,* 255 Md. at 225, 257 A.2d 138). In rejecting the application of strict liability, the Court of Appeals declined to extend *Yommer* to every leaking gasoline tank without regard to its location. *Rosenblatt,* 335 Md. at 73–74 & n. 6, 642 A.2d 180. *Accord National Tel. Cooperative Ass'n v. Exxon Corp.,* 38 F.Supp.2d 1, 8–9 (D.D.C.1998). *See also JBG/Twinbrook Metro Ltd. Partnership v. Wheeler,* 346 Md. 601, 609 n. 6, 697 A.2d 898 (1997).

 Section 519 sets forth the general principle upon which courts have held defendants to be liable regardless of fault: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519, at 34 (1977). Section 520 sets forth the following factors to be considered in determining whether an activity is abnormally dangerous:

(a) existence of a high degree of some harm to the person, land or chattels of another;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520, at 36 (1977).

 In summary, Maryland recognizes strict liability, adopts the definition of abnormally dangerous activity as set forth in § 519 of the Restatement (Second) of Torts (1977), and uses the six factor analysis set out in § 520.[5] In many, but not all cases, the "thrust of the doctrine is that the activity be abnormally dangerous in relation to the area where it occurs."[6] *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 133, 497 A.2d 1143 (1985).

---

**5.** All of the factors listed in § 520 are important and often interrelated. A court should consider all of the factors, apportioning their importance based on the evidence in the case. *See* Restatement (Second) of Torts § 520, comment h, at 39 (1977).

**6.** "Central to the determination of whether an activity is abnormally dangerous is whether it could be made safe through the exercise of

### Strict Liability in Pile Driving Cases

The circuit court acknowledged that "whether pile driving is an abnormally dangerous activity has yet to be determined by the Maryland Court of Appeals." The circuit court nevertheless concluded, after applying sections 519 and 520 to the facts of the case, that the Court of Appeals would hold that the pile driving activity in this case would not warrant the application of strict liability. We agree.

In the 1984 revision of Dean Prosser's landmark treatise, Professor Page Keaton observed that varying formulations of strict liability have been applied by some courts to hold that pile driving is an abnormally or unreasonably dangerous activity warranting liability without fault. W. Prosser & W. Keaton, *Torts* § 87 at 550 (5th ed. 1984). The reasoning of these decisions, as well as the results, is far from uniform. Some courts consider pile driving to be no different than blasting, and therefore dangerous enough to warrant strict liability regardless of the place in which it occurs. Others have taken a more fact-based approach, considering the activity in conjunction with the locale and the type of harm that resulted.

For example, in *Caporale v. C.W. Blakeslee & Sons, Inc.*, 149 Conn. 79, 175 A.2d 561 (1961), the Supreme Court of Connecticut held that pile driving activity during the construction of the Connecticut turnpike in 1958 and 1959, in close proximity to the plaintiff's business premises, warranted the application of strict liability. The Connecticut court analogized pile driving to blasting and aligned itself with those courts that imposed strict liability not only for flying debris but also for the vibrations caused by the explosive force of the blast. *Caporale*, 175 A.2d at 563–64. The Connecticut court noted, but declined to follow, a line of New York decisions, illustrated by *Fagan v. Pathe Industries, Inc.*, 274 A.D. 703, 86 N.Y.S.2d 859, 863–64 (1st Dept.1949), that rejected strict liability for pile driving where the damage was caused only by

---

reasonable care." *Arlington Forest Assoc. v. Exxon Corp.*, 774 F.Supp. 387, 390 (E.D.Va.1991).

vibrations.[7] The concurring justice in *Caporale* was of the view that pile driving is not inherently dangerous, reasoning that a pile driver is not "any more dangerous than some of the highpowered cars and gargantuan tractor-trailers that infest our roads today." *Caporale*, 175 A.2d at 565 (Murphy, J., concurring).

The Supreme Court of Minnesota held that vibrations caused by pile driving warranted the imposition of strict liability in *Sachs v. Chiat*, 281 Minn. 540, 162 N.W.2d 243 (1968). In this case, an adjoining landowner sued for damage to his property resulting from "the concussion and vibrations of pile-driving operations employed in constructing the foundation" of a neighboring home. *Id.*, 162 N.W.2d at 244. The trial court directed a verdict for the defendant on the ground that the defendants "had employed the necessary and usual means to adopt the Chiat lot to its lawful and appropriate use...." *Id.* at 245. The Supreme Court of Minnesota reversed, holding that pile driving "may be classed as an inherently dangerous or ultrahazardous activity." *Id.* at 246. The Minnesota court was persuaded by the reasoning of cases such as *Berg v. Reaction Motors Division*, 37 N.J. 396, 405, 181 A.2d 487, 492 (1962), which held that property damage caused by the vibrations from the testing of a rocket engine, under the principles set forth in the Restatement (First) of Torts §§ 519, 520 (1938), warranted strict liability. In reaching its decision, the Supreme Court of Minnesota noted, but rejected, a line of cases that declined to impose strict liability for property damage resulting from the operation of machinery that caused vibrations. *See, e.g., Trull v. Carolina–Virginia Well Co.*, 264 N.C. 687, 142 S.E.2d 622 (1965) (well drilling—no strict liability); *Ted's Master Service, Inc. v.*

---

7. *Fagan* relied on *Booth v. Rome, W. & O.T. R.R. Co.*, 140 N.Y. 267, 35 N.E. 592 (1893), in which the Court of Appeals of New York held, in a blasting case, that strict liability did not apply to damage caused only by vibrations. *Booth* was overruled in *Spano v. Perini Corp.*, 25 N.Y.2d 11, 302 N.Y.S.2d 527, 250 N.E.2d 31 (1969), in which the Court of Appeals of New York held that all damage from blasting, whether caused by debris or vibrations, subjected the defendant to strict liability.

*Farina Brothers Co., Inc.,* 343 Mass. 307, 178 N.E.2d 268 (1961) (pile driving—no strict liability).

In *Vern J. Oja Associates v. Washington Park Towers, Inc.,* 89 Wash.2d 72, 569 P.2d 1141 (1977), the Supreme Court of Washington held that pile driving was abnormally dangerous. In this case, a jury returned a verdict of $73,100 for damage to an apartment building. The defendant engaged in pile driving in order to construct a condominium tower on the adjacent lot. The Supreme Court of Washington, applying section 520 of the Restatement (Second) of Torts (1977), held that the trial court did not err in submitting the strict liability count to the jury. Without extended analysis, the Washington court concluded: "In the past, this court has found strict liability where damage was caused to plaintiff's well as the result of vibrations caused by an explosion. We find no significant distinction between vibrations caused by en explosion and vibrations caused by pile driving." *Vern J. Oja Associates,* 569 P.2d at 1143 (internal citation omitted). Similar reasoning supported the result in *Cincinnati Terminal Warehouses, Inc., v. Contractor, Inc.,* 324 N.E.2d 581 (Ohio App.1975).

A contrary conclusion was reached by the Supreme Court of Illinois in *In re Chicago Flood Litigation,* 176 Ill.2d 179, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997). In this case, the City of Chicago hired a contractor to replace wood piling clusters at five Chicago River bridges. During pile driving, the contractor allegedly caused a breach in an abandoned tunnel wall at the Kinzie Street bridge. Water from the Chicago River rushed into the tunnel and, eventually, into buildings connected to the tunnel. "Approximately 200,000 persons were evacuated from numerous Loop buildings. On April 14 [1992], the Governor of the State of Illinois declared the Loop and surrounding areas a state disaster area." *In re Chicago Flood Litigation,* 680 N.E.2d at 268.

A class action was filed by the property owners and their insurers. The trial court granted the defendant's motion to dismiss the two strict liability counts of the complaint, which alleged that pile driving was abnormally dangerous and ultra-

hazardous. The intermediate appellate court upheld the dismissal of the strict liability claims. The Supreme Court of Illinois, after a careful application of the section 520 factors, affirmed the dismissal of the strict liability claims.

**Strict Liability in this Case**

■■■■ Having reviewed the pertinent authorities, we now turn to the strict liability claim in this case. Whether an activity is abnormally dangerous is a question of law for the court. Restatement (Second) of Torts § 520, comment l, at 42 (1977); *In re Chicago Flood Litigation*, 680 N.E.2d at 280. Of course, the question of causation-in-fact, assuming that the activity is abnormally dangerous, is for the jury. *See Atlantic Mutual Ins. Co.v. Kenney*, 323 Md. 116, 127–28, 591 A.2d 507 (1991); *Peterson v. Underwood*, 258 Md. 9, 16–17, 264 A.2d 851 (1970); *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 356, 517 A.2d 1122 (1986); W. Prosser & P. Keaton, *Torts* § 41 (5th ed. 1984).

The appellant argues that pile driving should be considered abnormally dangerous simply because it produces uncontrollable vibrations, similar to blasting. She also asserts that pile driving created an abnormal risk to persons, such as Gallagher, who have historic homes, and that damage resulting from the inevitable emission of vibration cannot be eliminated through the exercise of due care. Although some courts have adopted this view, *e.g., Cincinnati Terminal Warehouses*, 324 N.E.2d at 582, others have declined to impose strict liability for vibrations resulting from blasting (as opposed to flying debris). *Fagan*, 86 N.Y.S.2d at 863–64. The Supreme Court of Illinois rejected this single factor analysis in *In re Chicago Flood Litigation*, 680 N.E.2d at 280. The Supreme Courts of North Carolina and Massachusetts also have rejected such an approach. *Trull*, 142 S.E.2d at 625; *Ted's Master Service, Inc.*, 178 N.E.2d at 270. We also reject this approach because the Court of Appeals in *Yommer* adopted the multi-factor test of section 520.

■■■■ The circuit court, after reviewing the evidence presented at trial, concluded that the defendants' pile driving in the

Inner Harbor did not involve a high degree of risk of harm to the person, land or chattels of another, as that phrase is used in section 520(a). We agree. Comment g to section 520 states: "The harm threatened must be major in degree, and sufficiently serious in its possible consequence to justify holding the defendant strictly liable for subjecting others to an unusual risk." The risk of harm proven in this case, relatively minor damage to a 200 year old home from the vibrations of the pile driving, simply is not a high degree of risk which requires the application of strict liability. *See Trull,* 142 S.E.2d at 625 ("Machines, motors and instrumentalities which cause vibrations are in such common use in present-day activities and the probability of damage from their use so variable that the mere fact that all of them cause vibrations is not a reasonable basis for common classification for liability.")

Under section 520(b), a plaintiff must show that the defendants' pile driving was likely to produce significant harm, not simply that she suffered some harm as a result of the pile driving activity.[8]

In this case, the evidence does not show that the harm resulting from the defendants' conduct in fact would be great or even that there was a serious risk of great harm to persons or property from pile driving. The extent of the plaintiff's damage, in the context of strict liability cases, is not great; the house was not rendered structurally unsound or uninhabitable. *See Yommer,* 255 Md. at 225, 257 A.2d 138.

■ The evidence in this case provides no basis for concluding that there is an inability to eliminate the risks from pile driving through the exercise of ordinary care. Section 520(c). "If an activity can be performed safely with ordinary

---

**8.** In *State Department of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 487–92, 468 A.2d 150, 157–59 (1983), the Supreme Court of New Jersey applied §§ 519 and 520 of the Restatement (Second) of Torts (1977) to impose strict liability for the disposal of mercury in the Hackensack Meadowlands, "an environmentally sensitive area where the arterial waterways will disperse the pollution through the entire ecosystem." Such conduct bears no resemblance to pile driving in the Baltimore Inner Harbor.

care, negligence serves both as an adequate remedy for injury and a sufficient deterrent to carelessness and the imposition of strict liability is unnecessary." *Fletcher v. Conoco Pipe Line Co.,* 129 F.Supp.2d 1255, 1261 (W.D.Mo.2001)(internal citations omitted). Gallagher contends that the vibrations from pile driving cannot be contained. That is true in a certain sense, but they can be and were in this case carefully monitored, using state-of-the art equipment. Moreover, the defendants set vibratory limits conservatively, taking into account the surrounding area, and the vibrations monitored near Gallagher's house never reached more than ten percent of the maximum levels set by the engineers.

The "common usage" standard of Section 520(d) has not been uniformly interpreted by the courts. *See In re Complaint of Weeks Marine,* 2005 WL 2290283 (D.N.J.2005). However, the Court of Appeals in *Yommer* adopted a narrow construction of common usage. 255 Md. at 225 n. 2, 257 A.2d 138. A similarly narrow construction was used by the Supreme Court of Illinois in *In re Chicago Flood Litigation,* 680 N.E.2d at 281. We agree with the circuit court that although "pile driving is a common activity for the development of waterfronts and is common to the local area of Baltimore's [I]nner [H]arbor, the average citizen has not personally conducted any pile driving activity, nor is it their custom to do so."

Gallagher does not contest the fact that pile driving is the only way to construct piers at the Inner Harbor. Nor does she contest the fact that piles were driven 40 to 50 years ago to construct the piers at the Key Highway Shipyard that were demolished so that the defendants could replace the old piers and construct new ones. Her argument, in essence, is that the defendants could have built townhomes on land instead of over the water. This argument ignores both reality and the import of section 520(e) of the Restatement. "Even if pile driving were inherently or intrinsically dangerous, the Restatement comment to the fifth factor explains that some such activities 'can be carried on only in a particular place.... If these activities are of sufficient value to the community (see Comment k), they may not be regarded as abnormally dangerous

when they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one.'" *In re Chicago Flood Litigation*, 223 Ill. Dec. 532, 680 N.E.2d at 281, (*quoting* Restatement (Second) of Torts § 520, comment j, at 41–42 (1977)).

Manifestly, the Baltimore waterfront is an appropriate place to conduct pile driving, to build piers, and to construct buildings (commercial or residential) overlooking the water. Such activities have been occurring at the Inner Harbor for decades, and nearly every structure at the Inner Harbor is built upon piles. The original piers for the Key Highway Shipyard, constructed on piles, were built some 40 years before Gallagher bought her historic residence. Surely there is no more appropriate place for pile driving than the Inner Harbor; the locale simply cannot be characterized as "the unusual, the excessive, the extravagant [or] the bizarre." *Yommer*, 255 Md. at 226, 257 A.2d 138. *See also Kirby*, 51 Md.App. at 374–75, 443 A.2d 640. The adoption of strict liability for the conduct at issue in this case "would impose grievous burdens incident to the ownership of land...." *Toy*, 176 Md. at 212, 4 A.2d 757, a burden we decline to impose.

The final factor under section 520(f) is the value of the activity to the community. Gallagher contends in her memoranda that "the value to the community that the townhomes might provide does not outweigh the danger from pile driving. Further, the luxury townhomes Appellees built can only be afforded by a small number of very wealthy people." Gallagher's memoranda presents an overly cramped view of section 520(f).

Baltimore has been a major seaport since the 1700's. However, due to shallow water, the Inner Harbor was chiefly a light freight and commercial passenger port until the 1950's, when shifts in the economy ended such uses. The renewal of the Inner Harbor was spearheaded by then Mayor William Donald Schaefer, resulting in Harborplace, which opened in July 1980. Since that time, the Inner Harbor has become a major cultural hub and a key ingredient to Baltimore's overall

economic life.[9] We agree with the circuit court that the defendants' redevelopment of an abandoned shipyard site has great value, economic and cultural, to the citizens of Maryland.

After considering the factors of section 520 of the Restatement, we agree with the circuit court's conclusion that the pile driving in this case was not an abnormally dangerous activity.

**Nuisance**

Gallagher also contends that the defendants' conduct interfered with the use and enjoyment of her land, amounting to a public and private nuisance. The circuit court disagreed, concluding that Gallagher's evidence of a private or public nuisance was insufficient as a matter of law.

Under Maryland law, to sustain a private nuisance claim "there must be a substantial interference with the plaintiff's reasonable use and enjoyment of its property." *Exxon Corp. v. Yarema,* 69 Md.App. 124, 151, 516 A.2d 990 (1986), *cert. denied,* 309 Md. 47, 522 A.2d 392 (1987). In *Yarema,* we held that the defendants' "contamination of ground water imposed crippling restrictions not only on the contaminated land but on all the property adjacent to the land." *Id.* at 153, 516 A.2d 990. A private nuisance requires the interference to be "substantial and unreasonable and such as would be offensive or inconvenient to the normal person." *Washington Suburban Sanitary Comm'n v. CAE–Link Corp.,* 330 Md. 115, 125, 622 A.2d 745 (1993). *See also Echard v. Kraft,* 159 Md.App. 110, 116–20, 858 A.2d 1018 (2004).

Nothing of that order occurred in this case. The defendants' activity was reasonable in time, place, manner, and duration and did not substantially interfere with Gallagher's use and enjoyment of her land. *CAE–Link Corp.,* 330 Md. at 126, 622 A.2d 745; *Echard,* 159 Md.App. at 119, 858 A.2d 1018. *See also Ted's Master Service,* 178 N.E.2d at 271 (rejecting a nuisance claim for pile driving). Residents of Baltimore City must accept the occasional annoyance and

---

9. *See* www.baltimore.to/baltimore.html; www.harborplace.com.

discomforts incidental to city life. *Hart v. Wagner*, 184 Md. 40, 49, 40 A.2d 47 (1944).

■ The elements of a public nuisance were discussed by the Court of Appeals in *Tadjer v. Montgomery County*, 300 Md. 539, 551–53, 479 A.2d 1321 (1984). Quoting Dean Prosser, the Court of Appeals said: "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." *Tadjer*, 300 Md. at 552, 479 A.2d 1321 (*quoting* W. Prosser, *Torts* § 89, at 585 (4th ed. 1971)). Quoting the Restatement of Torts (Second) § 821B(1) (1979), the Court of Appeals said: "A public nuisance is an unreasonable interference with a right in common to the general public." *Tadjer*, 300 Md. at 552, 479 A.2d 1321. This Court has applied the same standards for determining whether there is a public nuisance. *Miller v. Maloney Concrete Co.*, 63 Md.App. 38, 53–54, 491 A.2d 1218 (1985).

The circuit court concluded that the evidence produced at trial was insufficient to prove a public nuisance under these standards. We agree.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**