*Andrew David Toms v. Calvary Assembly of God, Inc.*, No. 26, September Term 2015,
Opinion by Greene, J.

**CIVIL LAW — TORTS — STRICT LIABILITY FOR AN ABNORMALLY
DANGEROUS ACTIVITY**

Lawful fireworks displays are not an abnormally dangerous activity, because the statutory
scheme regulating the use of fireworks significantly reduces the risk of harm associated with
the discharge of fireworks.

District Court for Frederick County
Case No. 1101-4504-2013
Argued: November 10, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 26
September Term, 2015

---

ANDREW DAVID TOMS

v.

CALVARY ASSEMBLY OF GOD, INC., ET AL.

---

Barbera, C.J.,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Harrell, Jr., Glenn T. (Retired,
        Specially Assigned),

JJ.

---

Opinion by Greene, J.
Harrell, J., joins in judgment only.

---

Filed: February 29, 2016

In this case, we address whether noise emanating from the discharge of a fireworks display constitutes an abnormally dangerous activity, which would warrant the imposition of strict liability.

Petitioner, Andrew David Toms ("Toms"), operates a dairy farm in Frederick County, Maryland, and maintains a herd of approximately 90 head of cattle. On September 9, 2012, a church-sponsored fireworks display took place on property adjacent to Toms' dairy operation. A permit to discharge fireworks had been obtained, and the event was supervised by a deputy fire marshal. No misfires or malfunctions took place. According to Toms, the fireworks display was so loud that it startled his cattle, and caused a stampede inside his dairy barn. The stampede resulted in the death of four dairy cows, property damage, disposal costs, and lost milk revenue.

Toms filed suit against the respondents, collectively, Calvary Assembly of God, Inc. ("Calvary"), Zambelli Fireworks Manufacturing Co. ("Zambelli"), Zambelli employee Kristopher Lindberg ("Mr. Lindberg"), and Auburn Farms, Inc.[1] in the District Court of Maryland sitting in Frederick County ("District Court"). He alleged that the stampede was the result of negligence, nuisance, and strict liability for an abnormally dangerous activity. After a bench trial, the District Court entered judgment in favor of the respondents. Toms appealed to the Circuit Court for Frederick County ("Circuit Court"). The Circuit Court affirmed the lower court's ruling. We granted Toms' petition for writ of certiorari, *Andrew*

---

[1] Auburn Farms, Inc. participated in the District Court proceedings, however, it was dismissed as a party.

*David Toms v. Calvary Assembly of God, Inc.*, 442 Md. 515, 113 A.3d 624 (2015). For the reasons explained below, we hold that lawfully discharging fireworks is not an abnormally dangerous activity, and, therefore, the imposition of strict liability is unwarranted. We affirm the judgment of the Circuit Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Toms operates a dairy farm on 69 acres of leased property near Walkersville, Frederick County, Maryland. The farm includes a barn and a herd of approximately ninety dairy cows. Auburn Farms, Inc., at the time of the incident, possessed the adjacent 40 acre property. Calvary sought and obtained permission from Auburn Farms, Inc. to use its property to host a fireworks display celebrating a church youth crusade.[2] Calvary then hired Zambelli, a professional fireworks company, to handle the fireworks.

Pursuant to Md. Code (2003, 2011 Repl. Vol.), § 10-104(b) of the Public Safety Article, an application for a permit to discharge fireworks was submitted to the Office of the State Fire Marshal. The application identified the date, time, and location of the anticipated fireworks display, as well as the size and number of fireworks shells that would be used. It also identified Mr. Lindberg as the Zambelli employee who would be responsible for discharging the fireworks, and included his "State shooter permit"[3] information, and proof

---

[2] Toms' relatives and landlord were also contacted by Calvary, but all declined permission to allow Calvary to host the event on their property.

[3] Firework shooters must be certified in the State of Maryland. Applicants must submit a "Firework Shooter Testing and Permit Application" to the Office of the State Fire Marshal

(continued...)

of Zambelli's insurance for the event. Deputy Fire Marshal Glen Ruch inspected Auburn Farms, Inc. and approved the location. He testified that, based on the number of shells, the State required a firing radius of 250 feet around the firing site.[4] However, he noted that, in the application, Mr. Lindberg included an aerial photo with notations indicating he planned to extend the firing radius to 300 feet. The application was approved, including the 300 foot firing radius, and a permit to discharge fireworks was obtained by the respondents.

The event was open to the public, and advertised in radio interviews, a newspaper ad, and on a banner located on Calvary's property on Route 194. Toms recalls seeing the banner, but states he had no notice of the event's time or location. On September 9, 2012, the day of the event, Mr. Lindberg accidently drove onto Toms' farm, and Toms assisted him in locating the entrance to Auburn Farms, Inc. Mr. Lindberg testified that he identified himself and his purpose when speaking to Toms.[5] The fireworks display took place at 8:30 p.m., and

---

[3](...continued)
in order to "to possess, sell or use explosives of any kind in the State of Maryland."

[4] The deputy fire marshal testified that the 250 foot firing radius was derived from the National Fire Protection Association's ("NFPA") guidelines, specifically NFPA 1123.

[5] The parties disagree as to how much notice Toms had of the event, although the District Court Judge found that Toms had at least some notice. This dispute is of no consequence, because Toms' barn was not located within the fall out zone of the fireworks. Deputy Fire Marshal Ruch testified that, pursuant to the NFPA's guidelines, the State required a perimeter of 250 feet around the firing location, and Mr. Lindberg voluntarily extended it to 300 feet. *See* Md. Code (2003, 2011 Repl. Vol.), § 10-103 of the Public Safety Article (stating that a permit to discharge fireworks shall be issued if it will "not endanger health or safety or damage property"); COMAR 29.06.01.09 (incorporating by reference the NFPA 1 Fire Code). Notice is only required when other properties are in the fall out zone, and that
(continued...)

Senior Deputy Fire Marshal Michael Guderjohn was onsite to supervise the event. Apparently, 250 shells were discharged over a fifteen-minute period without any misfires or duds. According to the parties' Agreed Statement of Facts submitted in their briefs to this Court, there is no dispute that Toms' barn was at least 300 feet away from the firing location.[6]

At the time of the event, Toms' cattle were inside the barn. Toms, however, arrived at the barn a few minutes after Mr. Lindberg began discharging fireworks. Toms states that the explosions startled his dairy cows, and caused them to stampede inside the barn. No witnesses, however, actually saw the stampede because no one was inside the barn with the cattle at the time the event started. The stampede, Toms states, resulted in the deaths of three cows shortly thereafter, and injuries to a fourth cow that ultimately led to its death, because it had to be "culled" from the herd a few weeks later.[7] In addition to the loss of four dairy

---

[5](...continued)
was not the case here.

[6] Although the parties agree that Toms' barn was not located within the 300 foot firing radius, they disagree about the actual distance between the barn and the firing radius. Whereas Toms contends that his barn was located between 300 to 500 feet from the firing site, Mr. Lindberg testified that the distance was 550 to 600 feet.

[7] Upon arrival, Toms testified, he saw four "downed" cows meaning the cows were lying down on the concrete floor of the barn, and were unable to stand up. Despite Toms' attempts to assist the cattle and after phone consultations with his veterinarian, after a week, only one cow was able to stand up. Therefore, Toms had to put down the other three dairy cows. One month later, the fourth cow was culled and sold for slaughter, because it lost utility: it could no longer produce milk or become pregnant. "Cull" is defined as "[s]omething picked out from others, [especially] something rejected due to inferior quality." WEBSTER'S II NEW
(continued...)

4

cows, Toms sustained property damage to fences and gates, disposal costs, and lost milk revenue. Toms sent a demand letter to Calvary outlining the damages, but Calvary and Zambelli denied liability.

On December 9, 2013, Toms filed suit in District Court against the respondents seeking damages of $13,148.20 under the theories of negligence, nuisance and strict liability for an abnormally dangerous activity. On May 2, 2014, a one-day bench trial took place in the District Court before Judge W. Milnor Roberts. Several witnesses testified on Toms' behalf, including his dairy veterinarian, Dr. Richard Doak, and lay witnesses with experience handling cattle. At the time of the event, the lay witnesses were located nearby the barn, and they testified about the loudness of the fireworks display, and hearing "banging" noises emanating from the barn at the time of the alleged stampede. Dr. Doak testified, among other things, about the tendency of loud unexpected noises to trigger a "startle response" in cows, which can lead to a stampede as well as injuries if a herd is confined to a small space.

The respondents called several witnesses to testify. Deputy Fire Marshal Ruch testified that Calvary and Zambelli complied with applicable laws by applying for, and receiving, a permit to discharge fireworks. He also inspected and approved of the firing location. On the day of the event, Senior Deputy Fire Marshal Guderjohn supervised the fireworks show, and stated that Mr. Lindberg maintained a proper firing radius around the

---

[7](...continued)
COLLEGE DICTIONARY 280 (3rd ed. 2005).

firing location, and that all shells were properly discharged without incident. Additionally, he stated that several fireworks displays had taken place within a mile of Toms' location on previous occasions. Mr. Lindberg also testified, and stated that the fireworks were discharged from 550 to 600 feet from Toms' barn.

The District Court entered judgment in favor of the respondents. It found that although Toms sustained damage, Toms did not establish any basis for liability for the injuries to his property, including livestock. The District Court determined that the fireworks display was a single event with no evidence that injuries or damages were sustained by direct contact with the discharged shells. No evidence established negligence on behalf of the respondents, because they had lawfully complied with statutory requirements by obtaining a permit, and the conditions of the permit were not violated. As to the issue of strict liability, the District Court found that the discharge of fireworks could be an abnormally dangerous activity, but that the danger is contained within the area allowed by the permit: here, a 300 foot firing radius. The District Court, however, did not find that noise from a fireworks discharge itself was abnormally dangerous. Furthermore, it reasoned, strict liability for an abnormally dangerous activity could not be imposed, because Toms' barn was not located within 300 feet of the firing location.

On May 29, 2014, pursuant to Md. Rule 7-113, Toms noted an appeal on the record to the Circuit Court. On November 24, 2014, oral arguments took place before Judge Julie S. Solt of that court. On January 8, 2015, the court affirmed the District Court's judgment.

6

Although it held that the use of fireworks was abnormally dangerous as to the damage from explosions, the Circuit Court stated that the respondents "are not strictly liable because the type of harm—damage caused by noise—is not of a type that makes the activity abnormally dangerous." Under the theory of negligence, it found no evidence to show that the respondents breached any duty of care. There was substantial evidence to show that the respondents "acted reasonably and with due care in preparing [and discharging] the fireworks display." Lastly, the Circuit Court held that the theory of private nuisance was inapplicable, because, as a one-time event, "the fireworks were not substantial and unreasonable and did not rise to the level of significant harm needed to create a private nuisance."[8]

We granted *certiorari*, *Andrew David Toms v. Calvary Assembly of God, Inc.*, 442 Md. 515, 113 A.3d 624 (2015), to answer the following question:

> Does the doctrine of strict liability for an abnormally dangerous activity apply to the noise of a fireworks discharge, based on the facts of this case?

For the reasons stated below, we shall answer in the negative. Accordingly, we affirm the judgment of the Circuit Court, and agree that there is no liability for abnormally dangerous activities, but for reasons different than those articulated by the Circuit Court.

---

[8] We granted Toms' petition for writ of certiorari, which raised the single issue of strict liability. In his brief to this Court, Toms raised the additional question of whether the lower court erred in not finding the discharge of 250 shells constituted a nuisance, and he briefly addressed the issue during oral arguments. In order to resolve the issue of strict liability for an abnormally dangerous activity, we need not, and do not, address the nuisance issue raised in Toms' brief. *See* Md. Rule 8-131(b).

7

**STANDARD OF REVIEW**

The question before this Court is whether discharging fireworks—specifically, the noise it produces—is abnormally dangerous, and thus, subject to strict liability. Whether an activity constitutes an abnormally dangerous activity is a question of law. RESTATEMENT (SECOND) OF TORTS § 520 cmt. l (AM. LAW INST. 1977) (stating that the function of the court is to decide whether an activity is abnormally dangerous by considering several factors and "the weight given to each that it merits upon the facts in evidence"). "As with all questions of law, we review this matter *de novo*." *State v. Johnson*, 367 Md. 418, 424, 788 A.2d 628, 631 (2002). *See also Gallagher v. H.V. Pierhomes, LLC*, 182 Md. App. 94, 109, 957 A.2d 628, 636 (2008).

For questions of fact for an action tried without a jury, we apply a clearly erroneous standard. Md. Rule 8-131(c) states:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

"On appellate review, the Court of Appeals may set aside the judgment of the lower court based on the factual findings of the lower court only when those findings are clearly erroneous." *Helinski v. Harford Mem'l Hosp., Inc.*, 376 Md. 606, 614, 831 A.2d 40, 45 (2003) (citing Md. Rule 8-131(c)).

8

**DISCUSSION**

Maryland has long recognized the doctrine of strict liability, which does not require a finding of fault in order to impose liability on a party. *See Yommer v. McKenzie*, 255 Md. 220, 222, 257 A.2d 138, 139 (1969); *Toy v. Atl. Gulf & Pac. Co.*, 176 Md. 197, 212, 4 A.2d 757, 764–65 (1939). The doctrine is derived from the famous 1868 English case of *Rylands v. Fletcher*, which recognized that, under certain circumstances, no-fault liability could be imposed.[9] "For more than a century, the Court of Appeals has recognized the doctrine of strict liability, derived initially from *Rylands v. Fletcher . . . .*" *Gallagher*, 182 Md. App. at 101, 957 A.2d at 632.

The modern formulation of the strict liability doctrine is found in the Restatement (Second) of Torts §§ 519–520 (1977). This Court adopted that formulation in *Yommer*, while the Restatement (Second) of Torts was still in its tentative draft. 255 Md. at 223–24, 257 A.2d at 139. In *Rosenblatt v. Exxon Co., U.S.A.*, we discussed the evolution of the doctrine: "Unlike the rule first enunciated in *Rylands*, this definition does not limit applicable activities to those causing an 'escape' of something onto the land of another; it requires only that there be harm to the person or property of another resulting from the abnormally dangerous

---

[9] "Dean Thayer pointed out the error in the popular assumption that the rule of *Rylands v. Fletcher* makes the defendant liable for all consequences in fact resulting from his conduct. This is precisely what the rule of the case does *not* do; it makes [the] defendant liable . . . only for proximate consequences, not for remote consequences." Fowler V. Harper, *Liability Without Fault and Proximate Cause*, 30 MICH. L. REV. 1001, 1005 (1932) (emphasis in original).

activity." 335 Md. 58, 70, 642 A.2d 180, 185 (1994).

Restatement (Second) of Torts § 519 defines strict liability for an abnormally

dangerous activity:

> One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm . . . . This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

To determine whether an activity is abnormally dangerous, a court uses six factors. These

factors are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520 (AM. LAW INST. 1977). *See Kelley v. R.G. Indus.,*

*Inc.*, 304 Md. 124, 132, 497 A.2d 1143, 1146 (1985) ("Whether an activity is 'abnormally

dangerous' under these sections depends on its satisfying the following six factors, specified

in § 520."). As the Restatement (Second) of Torts reminds us:

> Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care.

10

RESTATEMENT (SECOND) OF TORTS § 520 cmt. f (AM. LAW INST. 1977). The Reporter's Note for this section identifies typical abnormally dangerous activities, such as the storage of large quantities of water or explosives in dangerous locations, and conducting blasting operations in the middle of a city.

In Maryland, we weigh each factor independently. More emphasis is placed on the fifth factor: the appropriateness of the activity in relation to its location. *Yommer*, 255 Md. at 226, 257 A.2d at 140. "The thrust of the doctrine is that the activity be abnormally dangerous in relation to the area where it occurs." *Kelley*, 304 Md. at 133, 497 A.2d at 1147. "*Yommer* emphasized that the appropriateness of the activity in the particular place was the most crucial factor." *Kirby v. Hylton*, 51 Md. App. 365, 374, 443 A.2d 640, 645 (1982) (citation omitted). "The Court of Appeals reiterated the importance of locale in *Rosenblatt v. Exxon Co. USA* . . . ." *Gallagher*, 182 Md. App. at 104, 957 A.2d at 634.

In *Yommer*, the owners of a gasoline station were held strictly liable for damages resulting from gasoline contamination of the well water of an adjacent residential property. 255 Md. at 227, 257 A.2d at 141. There, we applied the Restatement factors, and found the fifth factor to be the most persuasive factor:

> No one would deny that gasoline stations as a rule do not present any particular danger to the community. However, when the operation of such activity involves the placing of a large tank adjacent to a well from which a family must draw its water for drinking, bathing and laundry, at least that aspect of the activity is inappropriate to the locale, even when equated to the value of the activity.

*Yommer*, 255 Md. at 225, 257 A.2d at 140. "We accept the test of appropriateness as the

11

proper one: that the unusual, the excessive, the extravagant, the bizarre are likely to be non-natural uses which lead to strict liability." *Yommer*, 255 Md. at 226, 257 A.2d at 141.

In applying the six factors, it is not necessary to have all six factors weigh in favor of a particular party. "Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily." RESTATEMENT (SECOND) OF TORTS § 520 cmt. f (AM. LAW INST. 1977).

Though the doctrine of strict liability has evolved since the rule in *Rylands* was first announced,[10] the policy concerns in favor of limiting its application remain. Previously, when this Court was still applying the rule in *Rylands*, this Court noted that without strict limitations, "the rule would impose grievous burdens as incident to the ownership of land . . . ." *Toy*, 176 Md. at 213, 4 A.2d at 765. In *Rosenblatt*, we discussed the nature of the limitations on the doctrine:

> We have taken care to limit the application of this doctrine because of the heavy burden it places upon a user of land. Our cases have limited the class of abnormally dangerous activities to those activities which would be abnormally dangerous in relation to the area where they occur. Moreover, we have limited the doctrine with regard to the class of actors to which it applies: we have required that the one engaging in the relevant activity have ownership

---

[10] The common law concept of strict liability was first articulated in *Rylands v. Fletcher*. Later, it was incorporated into the Restatement of Torts. It referred to strict liability as "absolute liability" and imposed such liability on persons engaging in "ultrahazardous activities." RESTATEMENT OF TORTS §§ 520–524 (AM. LAW INST. 1938). The modern version of the doctrine is found in the Restatement (Second) of Torts §§ 519–520, and refers instead to "abnormally dangerous activities."

or control over the land . . . . And, finally, we have required that the act have a relation to the occupation or ownership of land.

335 Md. at 73–74, 642 A.2d at 187 (internal citations omitted). In *Kelley*, we refused to apply the doctrine in a case involving a minor's death caused by the firing of a handgun. 304 Md. at 133, 497 A.2d at 1147. "The dangers inherent in the use of a handgun in the commission of a crime . . . bear no relation to any occupation or ownership of land. Therefore, the abnormally dangerous activity doctrine does not apply to the manufacture or marketing of handguns." *Id.*

After applying the Restatement's multi-factor test, in *Kirby v. Hylton*, the Court of Special Appeals declined to expand the strict liability doctrine where a minor was fatally injured after playing with, and being run over by, a heavy pipe. 51 Md. App. 365, 375, 443 A.2d 640, 645–46 (1982). The intermediate appellate court stated:

We find that we need not address the issues of escape and intervention because we do not think that the storage of a pipe in the instant case is an abnormally dangerous activity according to the criteria set forth in § 520 of the tentative draft and quoted in *Yommer* . . . . Because the activity did not entail an unreasonable risk of harm, the appellants must show negligence in order to recover and cannot rely on the doctrine of strict liability.

*Kirby*, 51 Md. App. at 375–76, 443 A.2d at 645–46.

In *Gallagher v. H.V. Pierhomes, LLC*, the Court of Special Appeals held that pile driving was not an abnormally dangerous activity. 182 Md. App. 94, 113, 957 A.2d 628, 639 (2008). There, pile driving operations at the Inner Harbor in Baltimore City caused minor damage in a 200 year old residence located 325 feet away from the construction site.

*Gallagher*, 182 Md. App. at 110, 957 A.2d at 637. The intermediate appellate court found that the defendants had acted appropriately in obtaining the proper permits, conducting geotechnical studies, and carefully monitoring the vibrations produced by the pile driving operations. "[T]here was only a single recorded vibration that exceeded the limits." *Gallagher*, 182 Md. App. at 99–100, 957 A.2d at 631. The court concluded that the risk of harm produced by pile driving operations "is not a high degree of risk which requires the application of strict liability" because that risk can be eliminated "through the exercise of ordinary care." *Gallagher*, 182 Md. App. at 110, 957 A.2d at 637–38.

### Jurisdictional Split on Strict Liability and Fireworks

Whether fireworks discharge constitutes an abnormally dangerous activity is a case of first impression in Maryland, because fireworks liability normally arises in the context of nuisance and negligence litigation.[11] Some jurisdictions, however, have addressed the issue of whether fireworks are abnormally dangerous. As evidenced by the cases below, litigation often came to fruition due to a malfunction or misfire at a fireworks display, which resulted in spectator injuries. Although fireworks liability cases often share similar facts, jurisdictions disagree on whether discharging fireworks is an abnormally dangerous activity, as evident

---

[11] Under certain circumstances, causes of action may exist in cases involving fireworks liability under the theories of negligence or nuisance. *See Crowley v. Rochester Fireworks Co.*, 76 N.E. 470 (N.Y. 1906) ("[T]here may be negligence in the character of the fireworks used on a particular occasion as well as in the method of their discharge."); *Little v. Union Trust Co. of Maryland*, 45 Md. App. 178, 183, 412 A.2d 1251, 1254 (1980) (discussing possible nuisance liability for shooting fireworks in the street).

14

by the split of legal authority on the matter.

The highest appellate court in Washington, for instance, held pyrotechnicians strictly liable when a shell exploded improperly and injured spectators at a public fireworks show. *Klein v. Pyrodyne Corp.*, 810 P.2d 917, *amended by* 817 P.2d 1359 ( Wash. 1991). It stated that Restatement factors (a) through (d) weighed in favor of imposing strict liability, because discharging fireworks creates a "high risk of serious bodily injury or property damage" due to the possibility of a malfunction or similar issue. *Klein*, 810 P.2d at 922. "The dangerousness . . . is evidenced by the elaborate scheme of administrative regulations with which pyrotechnicians must comply[,]" including licensing and insurance requirements. *Id.* at 920. Under factor (d), it further determined that discharging fireworks was not a matter of common usage, because the licensing scheme restricts the general public from engaging in that activity. *Id.* at 921. In addition to the high risk discharging fireworks creates, that court determined that public policy and fairness warranted strict liability. *Id.* at 922. Otherwise, the injured spectators would have been subject to the "problem of proof" because "all evidence was destroyed as to what caused the misfire of the shell that injured the Kleins." *Id.*

Arizona's intermediate appellate court was persuaded by the rationale in *Klein* in a case involving a misfire at a mall-sponsored fireworks display. *Miller v. Westcor Ltd. P'ship*, 831 P.2d 386, 392 (Ariz. Ct. App. 1991). Although the issue was in the context of negligence liability under § 427 of the Restatement (Second) of Torts, like *Klein*, it found

that the risk of malfunction or misfire could not be entirely eliminated, and that the "legislature has also recognized the dangerousness of fireworks by regulating their use" as reflected in a "statutory requirement that a pyrotechnician obtain a surety bond or certificate of insurance for at least $1,000,000 in order to obtain a license to conduct a public fireworks display." *Miller*, 831 P.2d at 391–92. Therefore, it held that public fireworks displays were an inherently dangerous activity.

Other jurisdictions, however, have come to the opposite conclusion, and have held that the level of risk involved with a fireworks discharge does not warrant strict liability. In *Haddon v. Lotito*, Pennsylvania's highest appellate court applied the ultrahazardous activity test, and determined that strict liability—referred to as absolute liability—did not apply in a case involving spectator injuries at a public fireworks display. 161 A.2d 160, 162 (Pa. 1960). Critically, that court distinguished lawful from unlawful fireworks displays:

> [A] public fireworks display, handled by a competent operator in a reasonably safe area and properly supervised (and there is no proof to the contrary herein), is not so dangerous an activity . . . . Where one discharges fireworks illegally or in such a manner as to amount to a nuisance and causes injury to another, some jurisdictions have held that liability follows without more. But the production of a public fireworks display, under the circumstances presented herein, is neither illegal nor a nuisance and, consequently, liability, if existing, must be predicated upon proof of negligence.

*Id.* (internal citations omitted). Other courts have ruled similarly. In *Litzmann v. Humboldt Cty.*, California's intermediate appellate court determined that "the handling and discharge of fireworks . . . were not such as to come within the definition of ultrahazardous activities." 273 P.2d 82, 88 (Cal. Dist. Ct. App. 1954). In that case, an undischarged firework was

16

negligently discarded on fairgrounds, and a minor was severely injured when he found and ignited it. After applying the Restatement factors, that court declined to impose strict liability, because "[i]t was the failure of care that caused the injuries and not the nature of the risks involved." *Litzmann*, 273 P.2d at 88.

> [T]hese risks could be eliminated by a degree of care far within the bounds of 'utmost care'. . . . [B]y the method of firing adopted[,] it was a reasonably easy matter to direct the firing so that injury would not arise through misdirection of the missiles; and that observation by those skilled enough to be licensed to explode fireworks was adequate to detect the lack of explosion of the material shot into the air. It appears, therefore, that the activities engaged in and charged to be ultrahazardous were in fact risks which could be and would be eliminated if commensurate care had been exercised.

*Id*.

In *Cadena v. Chicago Fireworks Mfg. Co.*, the Illinois intermediate appellate court stated that only Restatement factors (a), which focuses on the existence of a high degree of risk of some harm, and (b), which concerns the likelihood that the harm that results will be great, weighed in favor of strict liability. 697 N.E.2d 802, 814 (Ill. App. Ct. 1998) *overruled on other grounds by Ries v. City of Chicago*, 950 N.E.2d 631 (Ill. 2011). Notably, that court reminded readers that factor (c) "does not require the reduction of *all* risk" and that "the exercise of reasonable care in displaying fireworks will significantly reduce the risks involved [in a fireworks display]." *Cadena*, 697 N.E.2d at 814 (emphasis in original). Unlike other courts, it interpreted factor (d) broadly and found that "fireworks displays *are* a matter of common usage" because "many individuals view them and many municipalities display fireworks . . . ." *Id*. (emphasis in original).

17

**Fireworks Liability in Maryland**

In the instant case, Toms asks this Court to expand the strict liability doctrine and hold that noise emanating from a fireworks discharge is abnormally dangerous to livestock.[12] The Restatement factors we consider are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520 (AM. LAW INST. 1977).

Toms argues that the facts of the case are sufficient to show that each factor weighs in favor of imposing strict liability. He maintains that the resulting sudden loud explosions, for example, involve a high risk of harm that can trigger a startle reflex in dairy cows, which are known to be large, clumsy animals. That startle reflex may cause, as Toms alleges happened here, the cows to stampede and cause injuries to themselves as well as to property. Under factor (c), Toms posits that there is no way to eliminate this risk other than by choosing an alternative location to host the fireworks display. He also argues that the risk can be mitigated with advanced notice to the owner of the dairy cows of the fireworks

---

[12] In the petition for writ of certiorari, Toms states "This Court . . . can expand the factual application of this tort to instances where the sudden, abnormal noise of a fireworks display, adjacent to livestock, can create strict liability."

display.  For instance, Toms states that he was never given specific or general notice aside from a banner on Calvary's property advertising the event.  With advanced notice, Toms contends he could have mitigated the risks by moving the cows from the barn to an outdoor enclosure.  Toms further argues that factor (d) weighs in his favor, because although "fireworks displays at public parks, ballparks, and the like, are common, exploding fireworks adjacent to an active dairy farm is not."  Additionally, under factor (e), discharging fireworks 300 to 500 feet from a herd of cattle, in Toms' view, "is a disaster waiting to happen" and therefore, is not an appropriate location.

For support, Toms cites to *Toy v. Atl. Gulf & Pac. Co.*, and its discussion of liability without fault when an "occupier was not using the land in the common and natural way, and had artificially produced the potential danger . . . ."  176 Md. 197, 213, 4 A.2d 757, 765 (1939).  Toms states that the property of Auburn Farms, Inc. was not being used in the "common and natural way" because it was hosting a one-time event.  Toms further argues that under factor (f), a local church activity provides little benefit to the community, and does not outweigh the risks associated with the fireworks display to the adjacent dairy farm operation.  Lastly, in addition to the Restatement factors, Toms highlights important policy considerations.  "Because of population growth in Maryland, the interaction [between] farmers and development is a continuing issue . . . . Expanding Maryland case law to provide protection for farmers against damages from such abnormal intrusion would meet a social need."  Toms argues that he sustained a preventable injury, and if the court does not impose

19

strict liability, it shall remain an injury without remedy.

The respondents contend that the lower courts were correct in determining that, based on the facts of this case, strict liability is inapplicable, because evidence is insufficient to support Toms' claim that the noise produced by the fireworks discharge is abnormally dangerous to livestock. As support, the respondents cite to Md. Code (2003, 2011 Repl. Vol.), §§ 10-101 *et seq*. of the Public Safety Article as evidence that the General Assembly "has already regulated the use of fireworks, and it does not afford protection to the chattel for noise." Furthermore, they posit, the Restatement factors do not support expanding the doctrine of strict liability for abnormally dangerous activities. In their view, all the factors weigh in favor of the respondents. Under factor (a), there is not a high degree of risk associated with the discharge of fireworks, because the use of fireworks is heavily regulated: a deputy fire marshal inspected and authorized the firing location, and testified that the respondents lawfully complied with the permitting process; the respondents obtained a permit for the event; Mr. Lindberg voluntarily extended the firing radius an additional 50 feet beyond the State's requirement; a senior deputy fire marshal supervised the event, and testified that the shells were properly discharged with no misfires or duds. Furthermore, the respondents contend that Toms did not provide evidence that the risk of cows stampeding due to sudden loud noise is commonly known. Under factor (b), the most common risks associated with a fireworks display—mishandling, misfires, and malfunctions—did not occur in the instant case. There is no evidence of the foreseeability of a herd of dairy cows

20

suffering great harm from a fireworks display. In the past, similar fireworks displays have taken place in close proximity to Toms' dairy farm operation without apparent incident. Factor (c) is resolved in the respondents' favor, they suggest, because Toms was aware of the event. Lastly, the respondents state that factors (d) through (f) do not weigh in favor of strict liability, because fireworks displays are a frequent event in the city of Walkersville, the event was open to the public, and applicable laws were not violated. No noise ordinances were violated and advanced notice to Toms was not required.

In applying the clearly erroneous standard as it applies to questions of fact, we are satisfied with the evidentiary findings made by the District Court. There was sufficient evidence in the record to support those findings. Therefore, we need only review *de novo* the question of law for the issue of whether strict liability for an abnormally dangerous activity should be imposed on a lawful fireworks display.

Maryland defines fireworks as "combustible, implosive or explosive compositions, substances, combinations of substances, or articles that are prepared to produce a visible or audible effect by combustion, explosion, implosion, deflagration, or detonation." Md. Code (2003, 2011 Repl. Vol.), § 10-101(f) of the Public Safety Article. We disagree with Toms that our analysis should be so narrow as to focus solely on the audible component—the noise produced—by a fireworks display. In the petition for writ of certiorari, Toms refers to the "noise of a fireworks discharge," but the noise itself is a by-product of the activity of discharging fireworks. By definition, under § 10-101(f) of the Public Safety Article,

21

fireworks "are prepared to produce a visible or audible effect . . . ."  Therefore, when applying the multi-factor test from § 520 of the Restatement (Second) of Torts, we will consider all the characteristics and the nature of the risks associated with discharging fireworks.  After all, we are also mindful that "[o]ne who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on."  RESTATEMENT (SECOND) OF TORTS § 519 cmt. e (AM. LAW INST. 1977).  We apply the Restatement factors to the instant case:

**(a) existence of a high degree of risk of some harm to the person, land or chattels of others.**  Special events requiring the use of large, professional "display fireworks" are heavily regulated in Maryland pursuant to §§ 10-101 *et seq*. of the Public Safety Article.  In accordance with § 10-104, each fireworks display requires a permit to discharge fireworks.  The authority to grant such permits is vested in the State Fire Marshal.  In pertinent part, § 10-103 provides:

> (a) *In general*. — Subject to subsections (b) and (c) of this section, the State Fire Marshal may issue a permit to authorize the discharge of fireworks in a place where the discharge of fireworks is legal.
> (b) *Findings required by State Fire Marshal*. — The State Fire Marshal shall issue a permit to discharge fireworks only if the State Fire Marshal determines that the proposed discharge of fireworks will:
> > (1) not endanger health or safety or damage property; and
> > (2) be supervised by an experienced and qualified person who has previously secured written authority from the State Fire Marshal to discharge fireworks.

In order to obtain a permit, an individual must submit an "Application for Public Fireworks Display" to the State Fire Marshal.  The application requires, among other things, event

22

information, and the size and number of shells to be used. It also requires the firework company's contact information, proof of insurance, and its agent-shooter's name and the shooter's permit number. Additionally, prior to submitting the application, the site must be inspected and approved by an authority having jurisdiction. Md. Code (2003, 2011 Repl. Vol.), § 10-107 of the Public Safety Article. Here, the site was found to be an appropriate location, and it was approved.

We hold that a lawful fireworks display does not pose a high degree of risk, because the statutory scheme in place is designed to significantly reduce the risks associated with fireworks, namely mishandling, misfires, and malfunctions. Furthermore, the required firing radius of 250 feet was voluntarily extended by Mr. Lindberg to 300 feet. Critically, in enacting the Public Safety Article, the General Assembly did not regulate the audible effects of display fireworks, which indicates that any risk associated with the decibel level of a fireworks discharge is minimal or non-existent.

Lawful fireworks displays do not pose a significant risk because "[a] person who possesses or discharges fireworks in violation" of the permitting process "is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $250 for each offense." Md. Code (2003, 2011 Repl. Vol.), § 10-111(a) of the Public Safety Article. To impose a relatively light penalty for an unlawful fireworks display is telling. If an unlawful fireworks display is only a misdemeanor offense with no possibility of incarceration, why then should strict liability be imposed for risks associated with a lawful fireworks display?

23

**(b) likelihood that the harm that results from it will be great.** This factor also weighs in favor of not imposing strict liability, because the purpose of a 300 foot perimeter surrounding the firing location is to mitigate the likelihood of harm. The instructions sheet attached to the "Application for Public Fireworks Display" states, in pertinent part:

> If other properties are in the fall out zone of the fireworks, a letter must be attached from the property owner or representative of the property owner stating that they give permission for their property to be used in the fall out zone. If any structures are within the fall out zone, the owner of the structure must provide documentation that the structure will not be occupied during the fireworks display. All structures within the fall out zone shall be deemed as being unimportant.

The statutory scheme regulating the use of fireworks is specifically designed to reduce risk. "The harm threatened must be major in degree, and sufficiently serious in its possible consequences to justify holding the defendant strictly responsible for subjecting others to an unusual risk. It is not enough that there is a recognizable risk of some relatively slight harm . . . ." RESTATEMENT (SECOND) OF TORTS § 520 cmt. g (AM. LAW INST. 1977). *See also Gallagher*, 182 Md. App. at 110, 957 A.2d at 637 ("Under section 520(b), a plaintiff must show that the defendants' pile driving was likely to produce significant harm, not simply that she suffered some harm as a result of the pile driving activity."). Because Toms' dairy barn, and therefore his cows, were not located within the fall out zone, the likelihood of harm to the public and property was significantly reduced. The 300 foot firing radius was effective because no shells fired that night malfunctioned, and no debris littered Toms' property.

**(c) inability to eliminate the risk by the exercise of reasonable care.** We are

24

reminded that:

> It is not necessary, for the factor stated in Clause (c) to apply, that the risk be one that no conceivable precautions or care could eliminate. What is referred to here is the unavoidable risk remaining in the activity, even though the actor has taken all reasonable precautions in advance and has exercised all reasonable care in his operation, so that he is not negligent.

RESTATEMENT (SECOND) OF TORTS § 520 cmt. h (AM. LAW INST. 1977). We disagree with Toms that reasonable care cannot reduce the risk of harm to livestock to acceptable levels. In enacting §§ 10-101 *et seq*. of the Public Safety Article, the General Assembly took care to implement sufficient precautions so as to ensure that lawful fireworks displays can be a safe and enjoyable activity. This is evidenced by the active role the State Fire Marshal and authorities having jurisdiction have over the permitting process. Pursuant to § 10-103(b) of the Public Safety Article, the "State Fire Marshal shall issue a permit to discharge fireworks" upon a determination that the proposed event will "(1) not endanger health or safety or damage property; and (2) be supervised by an experienced and qualified person who has previously secured written authority from the State Fire Marshal to discharge fireworks." Health and safety, therefore, are of paramount concern, and we are satisfied that the regulations sufficiently protect the public and property. Only qualified professional fireworks companies and their agents—authorized shooters—may apply for a permit. The requirements of mandatory insurance coverage, a physical site inspection, and event supervision is evidence of reasonable care that reduces the risk of harm. The site inspection and prior approval of an authority having jurisdiction ensures that the firing location is

25

appropriate and that injury is unlikely. Importantly, additional measures are required if other properties are located within the fall out zone, including notice and permission from that property owner for their property to be used in the fall out zone.

The 300 foot firing radius is sufficient. Furthermore, notice to Toms was not necessary, because his dairy barn was located beyond the firing radius. In our view, the Restatement does not require the elimination of all risk, and because the risks inherent with a fireworks discharge can be reduced to acceptable levels, this factor does not support a conclusion of an abnormally dangerous activity.

**(d) extent to which the activity is not a matter of common usage.** "An activity is a matter of common usage if it is customarily carried on by the great mass of mankind, or by many people in the community." *Yommer*, 255 Md. at 225 n.2, 257 A.2d at 140 (citation omitted). We recognize that the discharging of lawful fireworks displays is a matter of common usage. In a letter dated July 3, 1776, John Adams wrote about the pomp and circumstance that should surround the celebration of our Nation's independence: "I am apt to believe that it will be celebrated, by succeeding Generations . . . . It ought to be solemnized with . . . Bonfires and Illuminations from one End of this Continent to the other from this Time forward forever more."[13] As stated in § 10-101 of the Public Safety Article, fireworks are designed "to produce a visible or audible effect" for the benefit of spectators. Therefore,

---

[13] *Letter from John Adams to Abigail Adams, 3 July 1776*, MASS. HIST. SOC'Y, www.masshist.org/digitaladams/archive/doc?id=L17760703jasecond [https://perma.cc/P22L-DMRX].

we define "common usage," as it pertains to this case, broadly to include not only the professionals who discharge fireworks, but also the spectators who partake in the fireworks display. Almost by definition, lawful fireworks displays involve two parties: the shooter and the audience. We conclude that lawful fireworks displays are a matter of common usage.[14] *See also Cadena*, 697 N.E.2d at 814 (determining that the "social utility" of fireworks displays to communities "is not outweighed by its dangerous attributes.").

**(e) inappropriateness of the activity to the place where it is carried on.** When this Court adopted the Restatement (Second) of Torts' multi-factor test for abnormally dangerous activities, this particular factor was identified as being the most crucial. *Yommer*, 255 Md. at 225, 257 A.2d at 140. "The thrust of the doctrine is that the activity be abnormally dangerous in relation to the area where it occurs." *Kelley*, 304 Md. at 133, 497 A.2d at 1147. Implicit in the granting of a permit to discharge fireworks, is the lawfulness of that proposed fireworks display. *See* § 10-103(a) of the Public Safety Article ("[T]he State Fire Marshal may issue a permit to authorize the discharge of fireworks in a place where the discharge of fireworks is legal."). At trial, two deputy fire marshals testified about the procedures entailed

---

[14] Although we determine that lawful fireworks displays are a matter of common usage for shooter and spectator alike, this is based on the social nature of the activity. Previous courts have applied a narrower construction of the term "common usage," but those activities lacked the positive social element in the instant case. *See Yommer*, 255 Md. at 224–25, 257 A.2d at 140 (determining that the placement of "a large underground gasoline tank in close proximity to the appellees' residence . . . is not a matter of common usage"); *Gallagher*, 182 Md. App. at 111, 957 A.2d at 638 (stating that although pile driving is a common activity in the area where it took place, "the average citizen has not personally conducted any pile driving activity, nor is it their custom to do so").

27

with the permitting process, that a physical site inspection showed that the proposed firing location was appropriate, that the event was supervised and properly executed, and that the respondents complied with all applicable laws. Furthermore, Deputy Fire Marshal Ruch testified that although the State required a perimeter of 250 feet from the firing location, the respondents voluntarily extended it to 300 feet. Additionally, Senior Deputy Fire Marshal Guderjohn testified that previous fireworks displays had taken place within a mile of Toms' dairy barn. Notably, Frederick County does not have a noise ordinance regulating the decibel level of fireworks. If Frederick County enacted regulations further restricting the use of fireworks, the respondents would be obliged to comply with those regulations in addition to applicable State laws. After all, pursuant to § 10-103(c)(1) of the Public Safety Article, a permit to discharge fireworks "does not authorize the holder of the permit to possess or discharge fireworks in violation of an ordinance or regulation of the political subdivision where the fireworks are to be discharged . . . ." In sum, we do agree that a lawful fireworks display does not fall within the context of "the unusual, the excessive, the extravagant, the bizarre . . . . non-natural uses which lead to strict liability." *Yommer*, 255 Md. at 226, 257 A.2d at 141.

**(f) extent to which its value to the community is outweighed by its dangerous attributes.** Here, a church-sponsored fireworks display celebrated a youth crusade, and the event was open to the public. As a symbol of celebration, fireworks play an important role in our society, and are often met with much fanfare. The statutory scheme regulating its use

28

minimizes the risk of accidents, thus, reinforcing the popularity of these displays. This Court recognizes that not all segments of the population may enjoy fireworks displays, especially those with noise sensitivities, however, we conclude that the social desirability of fireworks appear to outweigh their dangerous attributes.

**Policy considerations.** We are mindful that the doctrine of strict liability for abnormally dangerous activities is narrowly applied in order to avoid imposing "grievous burdens" on landowners and occupiers of land. *Toy*, 176 Md. at 213, 4 A.2d at 765. Toms argues that we should expand the factual application of this doctrine, however, the Restatement factors do not support such a position. The use of fireworks, especially in public fireworks displays, is heavily regulated pursuant to §§ 10-101 *et seq*. of the Public Safety Article. Under § 10-103, a permit to discharge fireworks cannot be obtained *unless* the State Fire Marshal determines that proposed fireworks display will "not endanger health or safety or damage property . . . ." In light of this policy, the respondents cannot be held strictly liable, because they lawfully complied with the conditions of the permit as well as applicable laws. We are persuaded by the rationale in *Haddon*: "a public fireworks display, handled by a competent operator in a reasonably safe area and properly supervised (and there is no proof to the contrary herein), is not so dangerous an activity." 161 A.2d at 162.

At issue in this case is a lawful fireworks display that was implemented pursuant to the requirements of the Public Safety Article. At trial, Toms did not present any evidence concerning what noise levels should be appropriate for public fireworks display. Sufficient

evidence was not presented to the trier of fact that a lawful fireworks display was abnormally dangerous to livestock. Thus, as a matter of law and on a case-by-case basis, we do not extend the doctrine of strict liability for abnormally dangerous activities under the circumstances.

## CONCLUSION

Accordingly, we affirm the judgment of the Circuit Court. Lawful fireworks displays are not an abnormally dangerous activity, because the statutory scheme regulating the use of fireworks significantly reduces the risk of harm associated with the discharge of fireworks. Furthermore, it is not the province of the Judiciary, but rather, the Legislature to determine zoning classifications and enact noise ordinances that would further regulate the use of fireworks.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. PETITIONER TO PAY THE COSTS.**

Judge Harrell joins in judgment only.